The State, ex rel. Robinson et al., Appellants,
*v.* City of Niles et al., Appellees.

(Decided March 10, 1941.)

*Mr. W. F. MacQueen,* for appellants.
*Mr. David Clayman,* city solicitor, for appellees.

Carter, J. The action below was in mandamus, wherein relators sought a writ to compel the city of Niles, through its proper officers and particularly the director of public service, to take immediate steps toward the collection of certain delinquent and unpaid water bills now due the city by reason of the sale of filtered water to consumers thereof, and also to take steps toward the collection of delinquent electrical bills due the city. It is the claim of relators that they are.

residents and taxpayers of the city of Niles, Ohio, and are bringing this action for the benefit of the municipality and all the taxpayers therein; that Niles is a city existing by virtue of the Municipal Code of the state of Ohio; that William P. Kearney is the mayor of the city, Oliver C. Evans, director of public service, Homer Thomas, auditor, and Thomas R. Smith, treasurer.

It is further averred that each of these officers is charged with the performance of duties as provided in the Ohio Municipal Code; that the director of public service is specifically charged with operating and maintaining the public utilities of the city of Niles, including the collection of charges, fees, accounts and assessments due the city by reason of water and electrical energy sold and delivered to various persons; that the city, in its proprietary capacity, operates a light and water department as public utilities; that the city of Niles owns a water distributing system by which it distributes and sells filtered water to persons, firms and corporations, which water it purchases in wholesale quantities from the Mahoning Valley Sanitary District; that the city purchases electrical energy from the Ohio Public Service Company in quantities; that it owns and operates a sub-station by virtue of which it adjusts the voltage of the current so purchased to suit the requirements of its various customers; that the city also owns a distributing system by which it distributes electrical energy to various firms, corporations and persons, both within and without the city of Niles; that the water and electrical energy are retailed by the city of Niles at a stipulated rate or charge and upon a metered basis; that the rates and charges so fixed, when fully collected, are sufficient to bring a return to the city of funds necessary to pay for the operation and maintenance of these utilities; that the city of Niles has become delinquent in the payment of assessments due the Mahoning Valley Sanitary District to

the extent of more than $105,000; that, in addition thereto, there is about to be or has been assessed the annual assessment for the year 1939, which assessment is in excess of $79,000; and that the city does not have the funds with which to pay the amount due the Mahoning Valley Sanitary District, from which the city purchases water.

Relator also alleges that, upon failure of the city to pay these accounts, a tax levy of sufficient size to pay the amounts due the sanitary district will be made and spread upon the books of the county treasurer against all of the taxable property within the city of Niles, and that such levy will be in addition to all other taxes and assessments; that the officers having charge of the management of these utilities, and particularly the director of public service, have pursued a course of neglect and indifference toward the collection of amounts due the city by reason of the sale of water and electrical energy; that the present officers have allowed unpaid bills to accumulate, the total of which is in excess of $200,000, and are making no effort to collect these delinquencies but are allowing the same to continue so that each month these delinquencies increase; that, by reason of the failure and refusal of the director of public service to perform his duties, many accounts become uncollectible and a loss occurs; that in many other instances an unjust preference is created in favor of those who do not pay their accounts as against those who do; and that due to the failure to collect these accounts a shortage has been created in funds necessary to meet the assessments of the Mahoning Valley Sanitary District, and an additional tax levy is necessitated, thereby placing an additional burden upon consumers who pay their accounts.

It is further claimed and averred that no effort will be made to collect these delinquencies or curtail the growth thereof unless done by order of court; that relators have no plain and adequate remedy at law for

the redress of the loss; that on April 9, 1940, demand was made upon the city solicitor of Niles to institute an action in a court of competent jurisdiction to compel the city officials to collect these delinquencies; and that on the fifteenth day of April 1940, the solicitor refused to bring such action.

The prayer of the amended petition is that a writ issue compelling the city, through its proper officers and particularly the director of public service, to collect these delinquencies and unpaid accounts now due the city, and that these officers be directed to comply with the duties devolving upon them by law, especially with respect to the collection of the various accounts due the city.

To this amended petition a demurrer was interposed by respondents, on the grounds that the petition does not state facts which show a cause of action, and that it appears on the face of the amended petition that the court has no jurisdiction of the subject of the action. The demurrer was sustained by the Common Pleas Court on the ground that the amended petition of relators does not state a cause of action. Relators not desiring to plead further or to amend the amended petition, final judgment was rendered in favor of respondents. Appeal was prosecuted to this court.

Was the Court of Common Pleas in error in sustaining the demurrer? First of all, we find no statute or statutes, nor has any such been cited to this court, specifically requiring any of respondents to collect the delinquencies in question, save and except Sections 3956 and 3958, General Code.

Section 3956 provides:

"The director of public service shall manage, conduct and control the waterworks, furnish supplies of water, collect water rents, and appoint necessary officers and agents."

Section 3958 provides:

"For the purpose of paying the expenses of con-

ducting and managing the waterworks, such director may assess and collect from time to time a water rent of sufficient amount in such manner as he deems most equitable upon all tenements and premises supplied with water. When more than one tenant or water taker is supplied with one hydrant or off the same pipe, and when the assessments therefor are not paid when due, the director shall look directly to the owner of the property for so much of the water rent thereof as remains unpaid, which shall be collected in the same manner as other city taxes.''

Section 12283, General Code, defines mandamus as follows:

''Mandamus is a writ issued, in the name of the state, to an inferior tribunal, a corporation, board, or person, commanding the performance of an act which the law specially enjoins as a duty resulting from an office, trust, or station.''

Section 12285 provides:

''The writ may require an inferior tribunal to exercise its judgment, or proceed to the discharge of any of its functions, but it cannot control judicial discretion.''

Section 12287 provides:

''The writ must not be issued in a case where there is a plain and adequate remedy in the ordinary course of the law.''

The courts of this state have consistently held that there must be a clear right to the writ by the one seeking it.

At the outset we might observe that in the city of Niles, as well as in many other cities of the state, many delinquencies of the kind and of similar character have been permitted to go uncollected in the last few years. No doubt the depression which we have been passing through has had considerable to do with the creation of such delinquencies. In many cases no serious attempts to collect them have been made.

The petition in the case at bar alleges, and the demurrer admits, that there is now due the city of Niles some $200,000 by reason of delinquencies in the payment for water and electrical energy, and it is further alleged that the officials are permitting these delinquencies to grow larger each month. Of course it goes without saying that no individual or private corporation could or would permit such delinquencies. In fact, individuals or corporations could not long exist if such were the case. If officials, whose functions are to see that such bills are paid, fail to do their duty as officials there are remedies afforded in this state in the way of removal of such officials from office. We have in this state at least one case which is in some respects similar to the case at bar wherein mandamus was sought. In that case the court held that removal from office was an adequate remedy and preferable to mandamus, as the writ of mandamus is an extraordinary remedy, resort to which should not be had when there is a plain and adequate remedy at law. The case to which reference is made is that of *State, ex rel. Clark,* v. *Murphy,* 2 C. D., 190, 3 C. C., 332, in which the court held that the remedy of removal was not only adequate but much more appropriate than the writ of mandamus. In the case of *Alger* v. *Seaver,* 138 Mass., 331, the Supreme Court of Massachusetts denied a writ of mandamus. Judge Devens, speaking for the court, said:

"Provision is made by Section 9 of the city charter for a prompt removal at pleasure of these officers. It is an appropriate and efficient remedy. It is much more effective in enforcing discipline than the mandates of a court, and not attended with the same embarrassment and difficulty. Even if, in order to effect this, a concurrence is necessary between the mayor and the aldermen, * * * and if, from the position taken by the mayor in regard to an order passed by the board of aldermen, it is probable he will not concur, it is

still the remedy which the law has provided for such neglects of duty. It would be less embarrassing that it should fail in a single instance, by reason of a difference between two bodies to whom the power of removal is entrusted, than that the court should undertake by mandamus to enforce the orders issued to the police force of a city.''

Section 38, Article II of the Ohio Constitution provides, on the subject of removal of officials:

''Laws shall be passed providing for the prompt removal from office, upon complaint and hearing, of all officers, including state officers, judges and members of the General Assembly, for any misconduct involving moral turpitude or for other cause provided by law; and this method of removal shall be in addition to impeachment or other method of removal authorized by the Constitution.''

Pursuant to this provision the Legislature of this state enacted Section 10-1 *et seq.*, General Code. This section provides:

''That any person holding office in this state, or in any municipality, county or any subdivision thereof, coming within the official classification in Section 38, Article 2, of the Constitution of the state of Ohio, who willfully and flagrantly exercises authority or power not authorized by law, * * * or to perform any official duty now or hereafter imposed upon him by law, or who is guilty of gross neglect of duty, gross immorality, drunkenness, misfeasance, malfeasance or nonfeasance, shall be deemed guilty of misconduct in office; upon complaint and hearing in the manner provided for herein shall have judgment of forfeiture of said office with all its emoluments entered thereon against him, creating thereby in said office a vacancy to be filled as prescribed by law. The proceedings provided for in this act are in addition to impeachment and other methods of removal now authorized by law, and this act shall not in any way be so interpreted as to

divest the Governor or any other authority of the juris-
diction now given in removal proceedings."

The following sections provide the procedure for
removal. Section 3515-1, Article VII, Sections 1 and 2,
General Code, provides the mode for recall of elective
officers. I have called attention to but two methods
prescribed by the statute for removal of officers. Sec-
tion 4249 of the General Code provides that "the
mayor shall be elected for a term of two years."

Section 4250 provides:

"The mayor shall be the chief conservator of peace
within the corporation. He shall have power to ap-
point, and have power to remove, the director of public
service, the director of public safety, and the heads of
the sub-departments of public service and public safety,
and shall have such other powers and shall perform
such other duties as are conferred and required by
law."

It is quite apparent that the mayor is an elective
officer, and that the director of public service is ap-
pointed by and subject to removal by the mayor. If
the holding of the courts, in the two cases cited *supra,*
is the law, then in that event the writ sought in the
case at bar should be refused. As above indicated,
Section 3956, General Code, provides in part that the
director of public service shall collect water rents.
However, this section makes no provision with refer-
ence to the collection of electrical accounts, and no
statute has been cited by counsel specifically requiring
any municipal official to collect electrical accounts.
There is no provision under Section 3956 authorizing
and empowering the director of public service to insti-
tute any suit or proceeding on his own behalf to collect
delinquent water accounts. This section is unlike Sec-
tion 2667, General Code, which provides that the county
treasurer may enforce payment of past due special
assessments. Provision is found in the section refer-
able to the county treasurer to institute suit or suits

to collect delinquent taxes. Also provision is made in Section 2658, General Code, for collection of past due taxes by the county treasurer, and how the same may be enforced. Many other provisions are found in the statutes authorizing the treasurer in his own name to bring actions to collect tax money due the county.

It therefore is clear that no authority is vested in the director of public service to enforce collection of these delinquencies, and it would be a vain and useless thing to order the director of public service to collect the same when such an order could not be enforced by the director of public service. We might further suggest that under the provisions of Section 3958 the city has a remedy by reason of the provision therein, to wit, that the director, when the assessments are not paid when due, shall look directly to the owner of the property for so much of the water rent thereof as remains unpaid, which shall be collected in the same manner as other city taxes. As to the wisdom or unwisdom of this provision we are not concerned, it is the law. Certainly the director of public service has no power or authority to collect the city taxes. Relators are not insisting on this provision as the relief sought is against the delinquent water users. Suppose a water user refuses to pay his water assessment, how is the director of public service going to collect the same? The water indebtedness is due the city, it being the real party in interest. Section 4306 provides in part that the city solicitor shall also be prosecuting attorney of the police or mayor's court. Section 4307 provides that the prosecuting attorney of the police or mayor's court shall prosecute all cases brought before such court, and perform the same duties as far as they are applicable thereto as required of the prosecuting attorney of the county. Section 4308 provides that, when required so to do by resolution of the council, the solicitor shall prosecute or defend, as the case may be, for and in behalf of the corporation all complaints,

suits and controversies in which the corporation is a party and such other suits, matters and controversies as he shall by resolution or ordinance be directed to prosecute.

It appears to this court that where suits are necessary to collect these delinquencies, authority to prosecute the same is found in this section. In the collection of these water bills the city is the real party in interest. If water users or electric-current users refuse to pay their bills when due, certainly council under this section may authorize the city solicitor to proceed to institute suits for such purposes. If this be true then certainly there is an adequate remedy provided by law to collect these delinquent bills. It is quite clear that by reason of the above observations relators do not have a clear right to the writ. In addition to what has been heretofore said it is urged by counsel for respondents that mandamus will not lie to control or regulate a general course of official conduct for a long series of continuous acts to be performed under varying conditions so that in enforcing the observance of the writ the court would have to undertake to oversee and control the general course of the official conduct of the party to whom the writ is directed. Counsel cites as authority for this proposition 25 Ohio Jurisprudence, 1000, Section 25; State, ex rel. Clark, v. Murphy, supra; State, ex rel. Staples, v. Sheets, 8 Ohio. Law Abs., 316; State, ex rel. Foster, v. Miller, 136 Ohio St., 295, 25 N. E. (2d), 686; it being the contention of counsel for respondents that the act or acts, which the relators in the case at bar would have the court do, are not of such a definite nature as to warrant granting of the relief sought, and that the act to be compelled by mandamus must be specific and definite and not of a general character leaving the respondent discretion in its performance.

However, due to the conclusions which we have heretofore reached, we deem it unnecessary to determine.

this particular claim of counsel for respondents. For the reasons hereinbefore indicated we have reached the conclusion that relators are not entitled to the relief sought, that the petition does not set forth facts sufficient to constitute a cause of action against respondents, and that the lower court was not in error in sustaining the demurrer.

After considering the case in this court and passing on the merits we have discovered that no bond was filed as provided in Section 4314, General Code. This section provides in part that *no such suit under this section by a taxpayer shall be entertained by a court until the taxpayer shall have given security for the costs of the proceeding.* We assume that this action is prosecuted under this section. Such provision was not called to our attention by counsel for respondents.

*Judgment affirmed.*

PHILLIPS and NICHOLS, JJ., concur.